UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MATTHEW HYNAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:18-cv-02816-JMS-MJD |
| ) | |
| XPO LOGISTICS FREIGHT, INC., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendant, XPO Logistics Freight, Inc. ("XPO"), replies to points argued in Plaintiff's Response in Opposition to Defendant's Motion to Dismiss and Compel Arbitration. In short, 1) Hynan was not a "transportation worker" exempt from the FAA; 2) that the Court cannot compel arbitration in North Carolina is a red herring and means simply that the Court must dismiss Hynan's complaint; 3) the Arbitration Agreement applies to Hynan's ADA and FMLA claims; and 4) the Arbitration Agreement is not unconscionable – Hynan has offered no evidence that arbitration in North Carolina would be cost-prohibitive. The Court should dismiss Hynan's complaint.

**I.     Hynan Was Not A Transportation Worker Within the Meaning of the FAA.**

Hynan erroneously argues the FAA does not apply to his contract of employment with XPO because he was a "transportation worker" under Section 1 of the FAA. In *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001), the Supreme Court addressed the scope of the FAA exemption, stating:

> The wording of § 1 calls for the application of the maxim *ejusdem generis,* the statutory canon that "[w]here general words follow specific words in a statutory 1309 enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." 2A N. Under

> this rule of construction the residual clause should be read to give effect to the terms "seamen" and "railroad employees," and should itself be controlled and defined by reference to the enumerated categories of workers which are recited just before it . . .
>
> Section 1 exempts from the FAA only contracts of employment of transportation workers.

*Id*. at 112. The Supreme Court held the exemption should be narrowly construed. *Id*. at 119.

The Court in *Circuit City* did not define "transportation worker," but noted most courts of appeal "conclude the exclusion provision is limited to transportation workers, defined, for instance, as those workers 'actually engaged in the movement of goods in interstate commerce.'" *Id*. at 112.

Hynan notes that in *Briggs & Stratton Corp. v. Local 232, Int'l Union, Allied Indus. Workers of Am. (AFL-CIO),* 36 F.3d 712, 715 (7th Cir. 1994), the Seventh Circuit limited the Section 1 exemption to the "transportation industries." (Response, p. 3) Hynan also concedes the exclusion is limited to transportation workers "actually engaged in the movement of goods in interstate commerce." (Response, p. 4, quoting *Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 53 n.3 (7th Cir. 1995)).

Case law and the facts plainly refute Hynan's contention he was "actually engaged in the movement of goods in interstate commerce." For example, the Eleventh Circuit held a pre-departure security agent who inspected goods and people at an airport was not "engaged in commerce" and therefore was not a "transportation worker." *Perez v. Globe Airport Sec. Servs., Inc.,* 253 F.3d 1280, 1284 (11th Cir.2001) (*vacated upon parties' joint motion to dismiss*).

Similarly, the court in *Kropfelder v. Snap–On Tools Corp.,* 859 F.Supp. 952, 958–59 (D. Md.1994), ruled a warehouse worker who filled orders and loaded and unloaded trucks was not a "transportation worker." The plaintiff's "'primary function was to receive products which were

trucked to the warehouse from various manufacturers. . . in various other states. . . When an order was received in the warehouse, I was responsible for seeing that the order was pulled, packaged for the dealer, labeled, and loaded onto trucks which delivered it to the dealers.... I actually loaded and unloaded these trucks.'" *Id*. The court held, "Unlike seamen or railroad employees, however, plaintiff is not . . . directly involved in the transportation business, although he has strong, close, and rather immediate contact with those who are so involved." *Id*. Noting the "liberal federal policy favoring arbitration," and mindful that "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration," the court concluded "plaintiff's relationship with interstate commerce, while quite substantial, is not sufficiently similar to that of seamen and railroad workers so as to bring him within the § 1 exemption." *Id*. (internal citations omitted).

Likewise, in *Lorntzen v. Swift Transp., Inc.*, 316 F. Supp. 2d 1093, 1097 (D. Kan. 2004), the court found a Safety Compliance Assistant for a transportation company was not a "transportation worker." As part of her job duties, the plaintiff ensured all "necessary paperwork was completed and collected on the 'Driver File Checklist,' and that the paperwork was maintained in a folder for each driver. . . [the plaintiff also] collected urine samples for drug testing and completed hearing and vision screenings. . . [she also] provided orientation and training to new drivers. . . [and] reviewed the DOT's and defendant's legal requirements and procedures regarding log books, moving violation compliance, and drug testing." *Id*. The court found she was not a "transportation worker" because:

> [She] did not travel interstate, nor handle goods that traveled interstate, nor supervise employees who were themselves transportation workers. Plaintiff's duties were more akin to those employees who serve an important support role in a transportation industry, but who are not themselves transportation workers. In theory all employees could trace a relationship to a transportation

3

> worker; therefore, a line must be drawn between employees that are exempt under § 1 and those that are not. The court concludes in this case that plaintiff is not an exempt transportation worker for purposes of § 1 of the FAA.

*Id*.

As a District General Manager, Hynan was an upper level management employee responsible for overseeing Defendant's *business operations*, i.e., meeting sales quotas, developing efficiencies, forecasting, and budgeting with regard to the distribution of products and freight. (Frayer Supp. Dec. ¶¶ 3-4)[1] As set forth in Hynan's job description, Hynan was responsible to "develop and lead multiple district remote work groups, and exceed goals for top line revenue growth." (Id. at ¶ 5 and Ex. A) To do so, he "collaborat[ed] with multiple departments at XPO Logistics to ensure expectations set forth by executive leadership [were] met." (Id.). Additionally, he was charged with "searching for opportunities to improve operational execution and profitability." (Id.) Hynan did not supervise truck drivers or dockworkers; his direct reports were management level employees. (Id. at ¶ 6)

Unlike a seaman, railroad worker, or truck driver, Hynan was not engaged in the *actual movement* of goods in interstate commerce, as he did not "handle goods that traveled interstate, nor supervise employees who were themselves transportation workers"; instead, like the plaintiff in *Lorntzen*, Hynan's "duties were more akin to those employees who serve an important support role in a transportation industry, but who are not themselves transportation workers." *Lorntzen*, 316 F. Supp. 2d at 1097. To accept Hynan's argument not only would contravene Seventh Circuit authority limiting the exemption to transportation "workers actually engaged in the movement of goods in interstate commerce" (Response, p. 4, quoting *Matthews*, 72 F.3d at 53 n.3), but would contradict the "'liberal federal policy favoring arbitration'" and the need to

---

[1] Paul Frayer's Supplemental Declaration is attached as Exhibit 1.

resolve "'any doubts concerning the scope of arbitral issues . . . in favor of arbitration.'" *Kropfelder,* 859 F.Supp. at 958–59.

**II.     The Court Should Dismiss This Case For Improper Venue.**

Hynan correctly notes this court cannot compel arbitration in North Carolina, but he ignores the import of that fact – the court must, as XPO requests, dismiss the case. In *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801 (7th Cir. 2011), Faulkenberg signed a franchise agreement in which he agreed to submit any disputes with CB Tax to arbitration in Texas. The district court dismissed the case based on improper venue and the Seventh Circuit affirmed. The Seventh Circuit stated it had "held that a motion to dismiss based on a contractual arbitration clause is appropriately 'conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3).'" *Id.* at 807 (quoting *Auto. Mechs. Local 701 Welfare Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007)). The Court elaborated, "In this situation, we have held that a Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or to compel arbitration, is the proper procedure to use when the arbitration clause requires arbitration out-side the confines of the district court's district." (*Id.* at 808 (citing *Cont'l Ins. Co. v. M/V Orsula*, 354 F.3d 603, 606-07 (7th Cir. 2003)).[2]

In a recent XPO case in the Eastern District of Michigan, the court rejected a former employee's claim that the XPO arbitration agreement was unenforceable as to her ADEA and Title VII claims, and also rejected her alternative request to stay the litigation and compel arbitration in Michigan, where plaintiff lived and had worked for XPO, rather than in North Carolina. *Spencer v. XPO Logistics*, 2018 WL 6830349 (E.D. Mich. December 28, 2018).

---

[2] The Seventh Circuit also pointed out that, "on a motion to dismiss for improper venue, the district court is not 'obligated to limit is consideration to the pleadings or to convert the motion to one for summary judgment' if the parties submit evidence outside the pleadings." *Id.* at 809 (citation omitted).

5

Consistent with Seventh Circuit authority, the court instead dismissed plaintiff's complaint. This court should likewise dismiss Hynan's Complaint.

### III. The Arbitration Agreement Applies to Hynan's ADA and FMLA Claims

Hynan argues the Arbitration Agreement does not apply to his ADA and FMLA claims because the agreement does not specifically list the statutes. But the Seventh Circuit does not require arbitration agreements specifically identify statutes. To the contrary, "the Seventh Circuit has held the language 'arising out of' is broad in scope and reaches all disputes that have their origin in the employment contract, regardless of whether the dispute involves interpretation or performance of the contract *per se.*" *Marzano v. Proficio Mortg. Ventures, LLC*, 942 F. Supp. 2d 781, 789 (N.D. Ill. 2013) *(citing Gore v. Alltel Communications, LLC,* 666 F.3d 1027, 1033 (7th Cir.2012)); *see also Faulkenberg,* 637 F.3d at 810-11 ("Arbitration clauses containing language such as 'arising out of' are 'extremely broad' and 'necessarily create a presumption of arbitrability.'") (citations omitted).

In *Marzano v. Proficio Mortg. Ventures, LLC*, 942 F. Supp. 2d 781, 788–89 (N.D. Ill. 2013), the court held the plaintiff's FLSA claims, and claims under Illinois and Ohio wage statutes, were subject to arbitration based on an arbitration provision stating, "Employee agrees that any dispute, controversy, claim, or difference between Employer and Employee which directly or indirectly relates to or arises out of this Agreement, or its breach, shall be subject to arbitration[.]" The court held, the "arbitration provision is unambiguous: any dispute that 'directly or indirectly relates to or arises out of' the employment agreement is to be arbitrated[.]"

The XPO Arbitration Agreement is broad in scope and plainly applies to claims brought under the ADA, FMLA, and Indiana law. The Arbitration Agreement provides, in relevant part:

> Any claim you wish to initiate **arising out of or relating to** this
> Agreement, the breach thereof, **your employment with us, or the**

6

> **termination of that employment will be resolved by binding arbitration** before a single arbitrator in the City of Charlotte, North Carolina administered by the American Arbitration Association in accordance with its Labor, Employment & Elections Arbitration Rules, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

(See Frayer Dec. Ex. A, ¶ 18(b)) (emphasis added).

All of Hynan's claims "arise out of" and "relate to" his "employment with" XPO and the "termination of that employment"; hence, all of Hynan's claims are covered by the Arbitration Agreement. *See also Spencer v. XPO Logistics*, *supra* (finding plaintiff was required to arbitrate his ADEA and Title VII discrimination and retaliation claims); *Bey v. XPO Logistics, Inc.*, 2017 WL 3923030 (M.D. FL Sept. 9, 2017) (compelling arbitration of FLSA claims).

**IV.     Plaintiff Has Provided No Proof the Arbitration Agreement Will Unduly Burden His Ability to Vindicate His Statutory Rights or is Otherwise Unconscionable.**

Hynan claims that requiring arbitration in North Carolina would cause him "great inconvenience" and expense and renders the Arbitration Agreement unconscionable. (Response, p. 8, 9). Hynan argues he "did not work in North Carolina and had no regular dealings with anyone with Defendant in North Carolina. His witnesses are located in Indiana and to require arbitration in North Carolina would significantly hinder his ability to prosecute his statutory claims and vindicate his statutory rights." (Response, p. 8). He offers no specifics about *how* his ability to prosecute his claims would be hindered; he merely vaguely asserts "the cost and inconvenience of having to travel to North Carolina by Hynan himself, much less any of his witnesses, means that he will effectively be unable to prosecute his ADA and FMLA claim. The actions that underlie his claims, as well as his witnesses, are all located in either Indiana or Michigan. As such, the terms of the Agreement are unconscionable and should not be enforced against Plaintiff." (Response, p. 9).

7

Hynan has not met his burden to prove the costs of arbitration in North Carolina are prohibitive or that the Agreement is otherwise unconscionable. In *Green Tree Financial Corp.– Alabama v. Randolph,* 121 S.Ct. 513 (2000), the Supreme Court recognized "[i]t may well be that the existence of large arbitration costs could preclude a litigant such as Randolph from effectively vindicating her federal statutory rights in the arbitral forum." *Id.* at 522. But, "the record does not show that Randolph will bear such costs if she goes to arbitration. Indeed, it contains hardly any information on the matter." *Id.* The Court declared:

> The 'risk' that Randolph will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement. To invalidate the agreement on that basis would undermine the liberal federal policy favoring arbitration agreements. It would also conflict with our prior holdings that the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.

*Id.* (internal quotation marks and citations omitted and emphasis added). The Court held, "where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs. Randolph did not meet that burden." *Id.* (internal citations omitted).

Likewise, in *James v. McDonald's Corp.,* 417 F.3d 672, 680 (7th Cir. 2005), the Seventh Circuit held "[t]he cost differential between arbitration and litigation is evidence highly probative to Ms. James' claim that requiring her to proceed through arbitration, rather than through the courts, will effectively deny her legal recourse." The plaintiff provided no proof on the cost differential, so the cost was found not to be prohibitive.

Similarly, in *Spencer v. XPO*, the court rejected the plaintiff's argument that arbitration in North Carolina, rather than Michigan (where plaintiff worked), would be cost prohibitive:

> Spencer grossly overestimates the potential costs associated with arbitration in this instance. . . her claim would fall under the AAA's Employment/Workplace Fee Schedule. Under that schedule, Spencer's initial filing fee would be capped at $300; moreover, the remainder of the AAA's fees would be paid by the employer. The Employment/Workplace Fee Schedule also allows claimants to apply for a hardship waiver, reduction, or deferral of costs. Although Spencer contends that travel and lodging costs contribute to cost prohibitive arbitration in North Carolina, the record is completely devoid of actual figures relating to the costs Spencer would incur should arbitration occur. Indeed, Spencer merely asserts that "the likely costs of arbitration would be measured in the many thousands of dollars.". . . "the 'risk' that [plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of the arbitration agreement." [*Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).] Indeed, to invalidate this arbitration agreement based on so speculative a risk "would undermine 'the liberal federal policy favoring arbitration agreements.'" *Id*. Further, it would also "conflict with [the Supreme Court's] prior holdings that the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Id*. The arbitration provision cannot be held unenforceable based on costs.

*Spencer*, Case No. 2:17-cv-14084-VAR-MKM, p. 4-5. The *same* AAA rules apply to Hynan's claims.

And, in *Market America v. Chuanjie Yang*, 2018 WL 3406865, *9 (M.D.N.C. July 12, 2018), a North Carolina district court recently rejected a plaintiff's argument that an arbitration agreement requiring out of state arbitration was unconscionable.[3] Relying upon *Green Tree* and its progeny, the court declared "that to invalidate an arbitration agreement on the basis of costs, a party must present evidence on the likelihood of prohibitive arbitration costs, including cost of arbitration, an ability to pay, and the difference in costs between arbitration and litigation." *Id* (citation omitted)*.* The *Market America* plaintiffs "contend[ed] that the cost of travel to North Carolina together with the costs of arbitration, in light of the amount of damages they are

---

[3] Hynan admits he bears the burden to prove the Arbitration Agreement is both procedurally and substantively unconscionable. (Response, p. 8)

9

claiming, 'would deter' each of them from maintaining this action." *Id*. The court found the plaintiffs' estimates "inconsistent with the costs published by the American Arbitration Association ("AAA")" and they did not meet their "'substantial burden of showing a likelihood of incurring prohibitive arbitration costs.'" *Id*. at *10.

The court in *Market America* also rejected plaintiff's argument the agreement was procedurally unconscionable under North Carolina law because "the record d[id] not reflect the circumstances surrounding the execution of the agreements, or any issue involving the availability of documents or information prior to executing the agreements . . . the Court notes that their allegations are insufficient to raise a concern regarding procedural unconscionability, as no allegations are made regarding facts surrounding the execution of their Agreements with Market America." *Id.* Hynan similarly offers no such evidence.

Like the plaintiffs in *Green Tree*, *James*, *Spencer*, and *Market America*, Hynan has provided no evidence to support his position that arbitrating his claims in North Carolina would be cost-prohibitive or otherwise renders the Arbitration Agreement unconscionable. He has not detailed the potential cost of arbitration, identified his ability to pay, identified the difference in costs between arbitration and litigation, or identified any cost or availability issues to preclude witnesses from participating in an arbitration in North Carolina. He has provided only speculation. Accordingly, the court should enforce Hynan's agreement and dismiss the complaint.

## V. Conclusion

For the reasons set forth above and in XPO's moving memorandum, the Court should dismiss the action and grant XPO such further relief as the Court deems appropriate.

>Respectfully submitted,
>OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
>
>By: /s/ *Kenneth B. Siepman*
>Kenneth B. Siepman, #15561-49
>111 Monument Circle, Suite 4600
>Indianapolis, Indiana 46204
>Telephone: (317) 916-1300
>Facsimile: (317) 916-9076
>*kenneth.siepman@ogletreedeakins.com*
>
>Attorneys for Defendant XPO Logistics Freight, Inc.

## CERTIFICATE OF SERVICE

I certify that on January 23, 2019 a copy of this *Reply in Support of Defendant's Motion to Dismiss* was filed electronically. Notice of this filing will be sent, by operation of the Court's CM/ECF system, to:

>Andrew Dutkanych
>Lauren Berger
>Biesecker Dutkanych & Macer, LLC
>411 Main Street
>Evansville, IN 47708
>*ad@bdlegal.com*
>*lberger@bdlegal.com*
>
>s/ *Kenneth B. Siepman*

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
111 Monument Circle, Suite 4600
Indianapolis, IN 46204
Telephone: 317.916.1300
Facsimile: 317.916.9076
*kenneth.siepman@ogletree.com*

37081270.1